GRISBAUM, Judge.
This is a suit to determine whether a donor had the capacity to donate real estate. Adam Mashia initially sued his mother, Lucy Mashia Pollard, for losses he allegedly incurred in constructing a was-herteria on her property and in operating her barroom located on the same property; he also alleged she owed him for loss of income as the result of his being evicted from his mother’s property. [Suit No. 15604] He filed a supplemental pleading claiming she owed him for contracting services he performed on a five-unit apartment building which she also owned. Lucy answered this suit denying these allegations and, in a reconventional demand, claimed her son owed her rent for use of her property. In a second suit, [No. 16835], Lucy sought to declare null and void a sale of ten lots to her son for $500.
These matters were consolidated for trial, which commenced February 10, 1977. According to the trial court’s reasons for *1250 judgment, during this trial Lucy was often incoherent, repeated the same answer to varied questions, and answered in a contradictory and unresponsive manner. After questioning the witness himself, the trial court declared Lucy Mashia Pollard to be incompetent to testify, to assist counsel, and to understand the proceedings. He continued the matter and suggested she be interdicted. [The transcript of this initial proceeding is unavailable. The trial court has certified the above facts.]
On June 8, 1979, this consolidated suit came again before the trial court. It initially handled the interdiction proceeding and found there was insufficient evidence to adjudge Lucy Mashia Pollard incompetent.
In the son’s suit against his mother [No. 15604] the trial court found against the son. It also found the mother failed to establish with any certainty her losses incurred during the time of the son’s takeover of her property. Therefore, it denied the mother’s reconventional demand. However, in the matter numbered 16835, the trial court found Lucy Mashia Pollard was not competent to execute a donation or an act of sale and that Adam Mashia failed to pay the $500 purchase price to his mother, Lucy Mashia Pollard. It, therefore, declared the donation on April 12, 1968 and the subsequent sale of the property on November 4, 1968 null and void and recognized Lucy Mashia Pollard to be the owner of the property. Adam Mashia appeals that part of the trial court’s judgment which found Lucy Mashia Pollard incompetent upon the date of the original act of donation [April 12, 1968] and declared the act of donation null and void. We reverse.
The sole issue is whether the trial court was “clearly wrong” in finding Lucy Mas-hia Pollard incompetent to execute an act of donation on April 12, 1968.
On April 12, 1968, Lucy executed an authentic act of donation which transferred ten lots in St. Charles Parish to her son, Adam. Later, on November 4, 1968, she executed two acts; one, a revocation of the prior donation and another, a sale which transferred the property to her son under onerous title for $500 cited as the purchase price. The testimony at the trial focused primarily on the events surrounding the November 1968 revocation of the donation and the act of sale.
After a careful analysis of the record, we find the following testimony to be pertinent to the issue of capacity to donate: Lucy stated she did not sign the act of donation and doesn’t remember going to the notary’s office; the signature on the notarial act is not hers; and she was ill in 1967 due to a sugar diabetes condition. Specifically, she claims in April of 1968, she was under medical treatment; she also reported experiencing kidney trouble and having an operation on her neck [thyroid]; she claims to have had three or four operations. On cross-examination, she admitted her kidney operation was in 1974.
Additionally, Melina Pollard, Lucy’s niece and nurse, testified she saw Lucy on a regular basis in 1968. She stated Lucy had been under treatment for a long time but admitted she didn’t know how long Lucy was under treatment. When she was questioned concerning Lucy’s condition prior to November of 1968, she merely stated Lucy was sick and couldn’t take care of herself. She finally testified Lucy had been operated on six times prior to November of 1968.
On the other hand, Adam, Lucy’s son, claims Lucy has been ill only in the past few years prior to the trial. He testified, prior to that time, Lucy was “healthy as an alligator.”
By depositional testimony, Dr. Florence Jones, a general surgeon [not board certified], stated she could not locate the medical records of Lucy for 1968. She further stated the earliest hospital records she was able to locate began with 1972. In addition she had no personal recollection of treating Lucy prior to 1972. Moreover, her records did not reveal any treatment administered to Lucy in 1968. However, she explained she was not saying she had not treated Lucy prior to 1972, but, rather, she did not have a memory of the treatment, and there *1251 are no medical records to refresh her memory.
Article 1779 of our Civil Code sets forth the necessary elements which form a valid contract: (1) parties legally capable of contracting; (2) their consent legally given; (3) a certain object which forms the matter of agreement; and (4) a lawful purpose. We are called upon to determine whether the first element, capacity to contract, is present.
In the absence of a special exception, a presumption arises that all persons possess the capacity to contract. La.C.C. art. 1782. An exception to the presumption of capacity to contract is enumerated in art. 1789 of the Civil Code recognizing the incapacity of persons who are temporarily deranged. It provides:
A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its durations, provided the situation of the party and his incapacity were apparent.
Although not specifically stated, apparently the trial court found: (1) Lucy Mashia Pollard was temporarily deranged on the date of the act of donation; and (2) this derangement was apparent at that time.
The legal principles which must guide this court in applying art. 1789 of our Civil Code were well expressed in First National Bank of Shreveport v. Williams, 346 So.2d 257, 264 (La.App. 3d Cir.1977). That court stated:
“The law of this state presumes the capacity to contract and favors and promotes that freedom. But very few exceptions exist as to this presumed capacity to contract, which exceptions must be shown quite convincingly and by the great weight of the evidence. Where doubt exists as to the showing of an exception, the presumed capacity of contract prevails.” (Emphasis added)
From the testimony adduced at trial, this court cannot say the evidence quite convincingly shows that Lucy Mashia Pollard was temporarily deranged and, therefore, incompetent on the date of the execution of the act of donation in April of 1968. Lucy has produced no medical evidence demonstrating a condition of incompetence in April 1968. Lucy’s and her neice’s general and vague statements of her condition in April 1968 are insufficient to prove the incapacity to donate the property. Importantly, there is no evidence that Lucy Mas-hia Pollard’s alleged incapacity was apparent — also a requisite of our Civil Code art. 1789. Additionally, the notary who passed the act of donation did not testify nor was there any deposition taken relating to his impressions or to any of the circumstances surrounding the act of donation in April of 1968. We find no factual basis for the trial court’s concluding Lucy Mashia Pollard was not competent to execute the act of donation on the date of April 12, 1968. Therefore, the trial court was clearly wrong in finding Lucy Mashia Pollard incompetent to execute the act of donation on April 12, 1968.
For the reasons assigned, the judgment of the trial court is reversed and all costs of this appeal are to be assessed against the appellee.
REVERSED.